UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA SCOTT, ) | |
| ) | |
| Plaintiff, ) | Case No. 25-cv-04097 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| CHICAGO PUBLIC SCHOOLS, ) | |
| and KIMBERLY OWENS, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brenda Scott filed suit against Defendants Kimberly Owens and the Board of Education of the City of Chicago[1] (the "Board") alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1), and Illinois state law. Defendants move to dismiss Counts II through IV for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] For the reasons stated herein, Defendants' motion is granted in part and dismissed in part [25].

**BACKGROUND**

Ms. Scott became the Assistant Principal of Owen Scholastic Academy in January 2022. On May 21, 2024, Ms. Scott was diagnosed with triple negative invasive ductal carcinoma, an aggressive form of breast cancer. Ms. Scott disclosed her diagnosis and medical treatment plan to her supervisor, Principal Kimberly Owens, in June 2024. To accommodate her cancer treatment, Ms.

---

[1] The Board of Education of the City of Chicago was improperly identified in the Complaint as "Chicago Public Schools."
[2] Ms. Scott has consented to the dismissal of her ADA claim (Count I) as to Principal Owens. (Dkt. 28) at ¶ 1. Defendant has not moved for dismissal of the Illinois Whistleblower Act claim (Count V), and so the Court will not discuss this claim.

Scott filed a request under the FMLA for intermittent leave on June 25, 2024. Shortly thereafter, on June 28, 2024, Ms. Scott began her weekly neoadjuvant chemotherapy. She later filed a request for workplace accommodations under the ADA on July 9, 2024. Ms. Scott's ADA accommodations were initially denied on July 24, 2024, allegedly after the ADA office spoke with Principal Owens. They were later approved on September 12, 2024 and subsequently backdated to July 2024.

On September 20, 2024, Ms. Scott received a pre-disciplinary notice from Principal Owens and the Board's legal department with multiple allegations of misconduct during the 2023-24 school year, including insubordination, failure to carry out duties, and corporal punishment of a student. An administrative meeting was held on October 15, 2024[3] to discuss these allegations. Ms. Scott received a notice of disciplinary action on December 17, 2024, and was suspended for 10 days from February 24 to March 7, 2025. She was ultimately terminated on May 14, 2025.

Ms. Scott alleges this disciplinary action constitutes discrimination, disparate treatment, and harassment under the ADA. Ms. Scott also alleges Principal Owens and the Board interfered with her rights under the FMLA by failing to inform her of said rights. Ms. Scott further alleges that her suspension and termination constitute retaliation under the FMLA. Lastly, Ms. Scott alleges the Board was negligent in its supervision and retention of Principal Owens under Illinois common law. The Board denies these allegations and asserts two affirmative defenses to the negligent hiring and supervision claims: local government immunity under the Local Government and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat Ann. 10/3-108, and proper determination of policy and exercise of discretion, 745 Ill. Comp. Stat Ann. 10/2-201.

---

[3] In her Complaint, Ms. Scott incorrectly identifies her disciplinary hearing as occurring on October 15, 2025. As this would have occurred after her May 14, 2025 termination, and in the wider context of the Complaint, the Court assumes this is error and that the disciplinary hearing occurred on October 15, 2024.

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Therefore, when considering a motion to dismiss a complaint, courts accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011).

**DISCUSSION**

    **I.    Interference under the FMLA**

In Count II, Ms. Scott alleges that both the Board and Principal Owens violated the FMLA by failing to notify or inform Ms. Scott of her right to job-protected leave prior to Ms. Scott's use of sick leave and the ultimate termination of her employment. Defendant argues that Ms. Scott failed to allege sufficient facts to establish such a violation.

An employer may not interfere with an employee's attempt to exercise their rights under the FMLA. *Pagel v. TIN Inc.*, 695 F.3d 622, 626 (7th Cir. 2012) (citing 29 U.S.C. § 2651(a)(1)). "To prevail on an FMLA interference claim, an employee need only show that his employer deprived him of an FMLA entitlement; no finding of ill intent is required." *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006) (citation omitted). To establish interference with one's FMLA rights, a plaintiff

must demonstrate (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided notice of her intent to take leave, and (5) her employer denied the FMLA benefits to which she was entitled. *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020). Allegations that an employer failed to provide notice of a plaintiff's FMLA rights are sufficient to state an interference claim, but such plaintiff must also allege that such failure prejudiced her. *Reitman v. Evanston/Skokie Community Consolidated Sch. Dist. 65*, 764 F. Supp. 717, 726 (N.D. Ill. 2025) (citing *Ziccarelli v. Dart*, 35 F.4th 1079, 1089 (7th Cir. 2022)).

An employee is entitled to FMLA leave if she possesses a "serious health condition," i.e., "an illness, impairment, or physical . . . condition that involves inpatient care . . . or continuing treatment," which "makes the employee unable to perform the functions of the position of such employee." *Pagel*, 695 F.3d at 627 (citing 29 U.S.C. §§ 2611(11); 2612(a)(1)(C)); *Burnett*, 472 F.3d at 478. Ms. Scott has triple negative invasive ductal carcinoma, a condition which she has clearly alleged involves continuing treatment. Additionally, Ms. Scott asserts that she was unable to perform certain duties, namely attending certain meetings and a leadership conference, due to her weekly chemotherapy treatments and her compromised immune system. (Dkt. 7) ¶¶ 24–27. Thus, Ms. Scott has adequately alleged that she has a "serious health condition" and is entitled to FMLA's protections, satisfying the first and third elements.

Ms. Scott has also adequately alleged that her employer is covered by the FMLA and that she provided notice of her intent to take leave. The FMLA covers "public agenc[ies]" which include "any agency of . . . a political subdivision of a State." 29 U.S.C. § 203(x); 29 U.S.C. §2611(4)(A)(iii). Ms. Scott works for Chicago Public Schools, which she describes as a "public entity." (Dkt. 7) ¶ 3. Assuming this is true, Ms. Scott has satisfied the second element.

Further, an "employee's notice obligation is satisfied so long as [s]he provides information sufficient to show that [s]he likely has an FMLA-qualifying condition." *Lutes*, 950 F.3d at 366 (citing

*Burnett*, 472 F.3d at 480). Here, Ms. Scott expressly invoked her protections by submitting her FMLA request on June 25, 2024. (Dkt. 7) ¶ 24. Moreover, Ms. Scott first informed Principal Owens of her breast cancer diagnosis and her need for treatment in June 2024. *Id.* ¶ 18. Between June 3, 2024 and June 11, 2024, a series of emails were exchanged between Ms. Scott and her supervisors, Principal Owens and Network Chief Mira Weber, wherein Ms. Scott informed both individuals that she intended to take leave to install a chemotherapy port. *Id.* ¶¶ 20–22. Because Ms. Scott adequately alleged that she informed her supervisors of her intent to take medical leave because of a "serious health condition," she has satisfied the fourth element.

Lastly, Ms. Scott's allegation that her employer interfered with her FMLA benefits by failing to provide her notice of such benefits satisfies the fifth element. *Lutes*, 950 F.3d at 363. Though "[t]he Seventh Circuit has not squarely answered the question of whether a failure to give an employee notice of available FMLA rights constitutes interference," other courts have. *See Reitman*, 764 F. Supp. 3d at 725–26 (collecting cases). A plaintiff's interference claim under the FMLA can be premised on the allegation that defendants failed to provide notice if the plaintiff also alleges prejudice from that lack of notice. *Reitman*, 764 F. Supp. 3d at 726. "Prejudice" means a harm arising from the violation, including, but not limited to, financial harm and additional work. *Id.*; *Zicarelli*, 35 F.4th at 1084.

Ms. Scott contends that she was never delivered notice nor information regarding her FMLA rights. (Dkt. 7) ¶ 68. After disclosure of her breast cancer, Ms. Scott had to take sick leave while her FMLA application was under review. (Dkt. 7) ¶ 24. Though her application was ultimately approved and she availed herself of FMLA leave, (Dkt. 7) ¶ 73, she nevertheless details that she had to continue working and complete in-person duties. (Dkt. 7) ¶¶ 26–27, 74. It is plausible that Ms. Scott suffered financial harm and additional work as a result of not being able to take her job-

protected leave under the FMLA. Ms. Scott's claim for interference under the FMLA thus survives Defendant's motion to dismiss.

## II. Retaliation under the FMLA

In Count III, Ms. Scott alleges that both the Board and Principal Owens violated the FMLA by engaging in retaliation. Defendants argue that Ms. Scott was not terminated for her exercise of FMLA rights, but because of misconduct preceding said exercise. "Employers are . . . prohibited from retaliating against an employee that exercises or attempts to exercise FMLA rights," *Pagel*, 695 F.3d at 631 (citing 29 U.S.C. 2615(a)(1)), including by considering "the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *Goezler v. Sheboygan Cnty.*, 604 F.3d 987, 992 (7th Cir. 2010) (interpreting 29 U.S.C. § 2615(b)). An FMLA retaliation claim "need not prove that retaliation was the only reason for her termination." *Lewis v. School Dist. #70*, 523 F.3d 730, 741 (7th Cir. 2008). Instead, it is sufficient to show "that the protected conduct was a substantial or motivating factor in the employer's decision." *Id.* at 741–42.

Here, Ms. Scott alleges that the Defendants retaliated by, among other things, counting her job-protected leave against her in performance evaluations, requiring her to attend to duties while on job-protected leave, suspending her for ten days, and terminating her employment for taking job-protected leave. (Dkt. 7) ¶ 74. To support her claim, Ms. Scott alleges that she was asked to attend the Leadership Conference on July 15, 2024 after she began her FMLA leave on June 27, 2024. (Dkt. 7) ¶ 26. She also alleges that on or before September 18, 2024, Ms. Scott received a lower evaluation rating, despite her qualifications and satisfactory job performance. (Dkt. 7) ¶¶ 15, 33. Two days later, Ms. Scott received a pre-disciplinary notice. (Dkt. 7) ¶ 37. The September 20, 2024 pre-disciplinary notice[4] Ms. Scott received reveals several instances of alleged misconduct from

---

[4] Ms. Scott's Complaint refers multiple times to the pre-disciplinary notice and the subsequent disciplinary hearing on October 14, 2024, but does not attach the notice to her Complaint. "A

October 4, 2023 to May 31, 2024 which, based on their severity, could result in a written reprimand, suspension or dismissal. (Dkt. 25), Ex. B at 1–2. This included a failure "to complete numerous tasks assigned . . . in a timely manner" in "the beginning of the 2024 school year." *Id.* at 2. It is true that "employers may fire employees for poor performance if they would have fired them for their performance regardless of their having taken leave." *Pagel*, 695 F.3d at 629. But, at this stage, the Court must construe all facts in the manner most favorable to Ms. Scott. In this light, the close timing between the Board's disciplinary action and Ms. Scott's diagnosis disclosure, alongside the extended delay between the alleged misconduct and the Board's disciplinary action, raises an inference that the Board's disciplinary action was pretextual. It is then equally plausible that Ms. Scott received an adverse employment action, namely diminished performance evaluations and disciplinary action, because she took her FMLA leave and so could not complete the duties assigned to her. Because of this plausibility, Ms. Scott's claim for retaliation under the FMLA survives.

### III. Negligent Supervision and Retention

In Count IV, Ms. Scott alleges that the Board negligently supervised and retained Principal Owens. Defendants argue that Count IV should be dismissed because these allegations are baseless, conclusory, and foreclosed by governmental immunity under the Local Government and Governmental Employees Tort Immunity Act. 745 Ill. Comp. Stat. Ann. 10/3-108; 10/2-201.

In Illinois, "employers have a duty to act reasonably in hiring, supervising, and retaining their employees." *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 649 (7th Cir. 2017). Negligent supervision is a "separate and distinct cause of action" from negligent retention, *Doe v. Coe*, 434 Ill.

---

plaintiff is under no obligation to attach to her complaint documents upon which her action is based, but a defendant may introduce certain pertinent documents if the plaintiff failed to do so." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Defendants attached the notice to their motion to dismiss, which may be "considered part of the pleadings" because it is "referred to in the plaintiff's complaint and are central to her claim." *Id.*

Dec. 117, 131 (2019), but the two share common elements. To claim negligent supervision and retention of an employee, a plaintiff must show: (1) the defendant-employer knew or should have known that an employee had a particular unfitness for his position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the hiring, retention, or failure to supervise; and (3) that this particular unfitness proximately caused the plaintiff's injury. *Id.* (citing *Van Horne v. Muller*, 235 Ill. Dec. 715, 721 (1998)). Prior notice of a particular unfitness is not required for foreseeability, though it may be informative. *Doe*, 434 Ill. Dec. at 132. It is also unnecessary that a defendant foresaw "the precise nature of the harm or the exact manner of occurrence; it is sufficient if, at the time of the defendant's action or inaction, some harm could have been reasonably foreseen." *Anicich*, 852 F.3d at 654 (citing *Regions Bank v. Joyce Meyer Ministries, Inc.*, 383 Ill. Dec. 767, 774 (2014)).

      Here, Ms. Scott alleges "Principal Owens' unfitness for her position . . . because of her history of aggressive and harassing behavior towards Ms. Scott and others" demonstrates the Board negligently supervised and retained Principal Owens. (Dkt. 7) ¶ 77. But Ms. Scott's Complaint fails to allege specific facts which indicate a "particular unfitness" of Principal Owens because of her "aggressive and harassing behavior." As recognized in *Van Horne*, a general allegation of unfitness cannot sustain a cause of action, particularly where a plaintiff does not allege specific characteristics of the allegedly harmful employee. 235 Ill. Dec. at 723 (citing *Fallon v. Indian Trail Sch., Addison Township Sch. Dist. No. 4*, 148 Ill. App. 3d 931, 935–36 (1986)). To be sure, "aggressive and harassing conduct" can be a "particular unfitness" which gives rise to a claim of negligent supervision and retention. *See, e.g., Anicich*, 852 F.3d at 654. But without more facts demonstrating Principal Owens' particular unfitness, Ms. Scott's claim fails. Because Ms. Scott's complaint fails to sufficiently allege her negligent supervision and retention claims, the Court does not reach the issue of the Board's immunity.

**CONCLUSION**

      For the foregoing reasons, the Court grants Defendant's motion to dismiss [25] as to Count IV and denies Defendants' motion as to Counts II and III.

**IT IS SO ORDERED.**

Date: 2/27/2026

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge